641-07/MEU

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
VOYAGER SHIPHOLDING CORP.,

    Plaintiff,

  -against-

HANJIN SHIPPING CO., LTD.,

    Defendant.

------------------------------------------------------x

**07 CIV 11123 (GEL)**

## DEFENDANT'S REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF MOTION FOR COUNTER-SECURITY

FREEHILL HOGAN & MAHAR, LLP
Attorneys for Defendant
Hanjin Shipping Co., Ltd.
80 Pine Street
New York, NY  10005
(212) 425-1900 / (212) 425-1901 (fax)

Of Counsel
Michael E. Unger (MU 0045)
Lawrence J. Kahn (LK 5215)

NYDOCS1/297737.2

# TABLE OF CONTENTS

TABLE OF AUTHORITIES                                                             iii

PRELIMINARY STATEMENT                                                             1

ARGUMENT

    POINT I

        Rule E(7) Requires Voyager to Post Counter-Security
        For the Full Amount of Hanjin's Counterclaims                        2

    POINT II

        Hanjin's Overpaid Hire Counterclaim Arises Out of
        the Same Transaction or Occurrence as Voyager's
        Claim and Accordingly Counter-Security Should
        be Required                                                           3

        1.    Background to the Overpaid Hire
              Counterclaim                                                3
        2.    There is No Other Document that
              makes This Counterclaim a Separate
              Transaction                                                 5
        3.    This Counterclaim Does Not Solely Sound
              in Tort; Moreover, Tort Claims Including This
              One – May Indeed Arise Out of the Same
              Transaction as Contract Claims and Are Not
              Separate Transactions                                       5

    POINT III

        Hanjin's Counterclaims Are Not Frivolous                              9

    POINT IV

        The Security Obtained in South Africa Does Not
        Serve to Waive or Estop This Request for Counter-
        Security                                                             14

POINT V

      Hanjin's Counterclaims Are Not Asserted For
      a Vexatious or Harassing Purpose        16

POINT VI

      Counter-Security Should Be Awarded in Full    17

CONCLUSION      20

## TABLE OF AUTHORITIES

**Cases**

Alpharma Inc. Secs. Litig., 372 F.3d 137 (3d Cir. 2004) .............................................. 6

Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23 (1st Cir. 2004)............................. 6

Aqua Stoli Shipping, Ltd. v. Gardner Smith Pty, Ltd., 460 F.3d 434 (2nd Cir. 2006)................. 15

ATSI Communications, Inc. v. Shaar Fund, Ltd., 493 F.3d 87 (2d Cir. 2007) .............................. 6

BJC Health Sys. v. Columbia Cas. Co., 478 F.3d 908 (8th Cir. 2007)........................................... 6

C Transport Panamax Ltd. v. Pacific Ocean Resources Ltd., No. 06-cv-11413, Docket

    No. 45, (S.D.N.Y. filed Oct. 26, 2006) ................................................................................. 19

Cudworth v. The ST. CUTHBERT, 146 F.Supp. 857 (E.D.VA. 1957) ...................................... 17

Dongbu Express Co., Ltd. v. Navios Corp., 944 F. Supp. 235 (S.D.N.Y. 1996) ................... 15, 18

Expert Diesel, Inc. v. The Yacht "Fishing Fool", 627 F. Supp. 432 (S.D.FL. 1986) ................... 13

Finecom Shipping Ltd. v. Multi Trade Enterprises AG, 2005 U.S. Dist. LEXIS 25761

    (S.D.N.Y. Oct. 25, 2005) ............................................................................................. 9, 10

Front Carriers Ltd. v. Transfield ER Cape Ltd., 2007 U.S. Dist. LEXIS 85177 (S.D.N.Y.

    Nov. 16, 2007) .......................................................................................... 2, 9, 10, 11

Incas and Monterey Printing and Packaging, Ltd. v. M/V SANG JIN, 747 F.2d 958

    (5th Cir. 1984 .................................................................................................................. 8

Maersk, Inc. v. Neewra, Inc., 443 F. Supp. 2d 519 (S.D.N.Y. 2006)........................................... 6

Maryland Tuna Corp. v. MS BENARES, 429 F.2d 307 (2d Cir. 1970)...................................... 18

Moore v. New York Cotton Exchange, 270 U.S. 593 (1926)........................................................ 8

North Offshore AS v. Rolv Berg Drive AS, 2007 U.S. Dist. LEXIS 87648 (S.D.N.Y.

    Nov. 29, 2007) ............................................................................................................. 14

Result Shipping Co. Ltd. v. Ferruzzi Trading USA, 56 F.3d 394 (2d Cir. 1995).................. 10, 13

Rolls Royce Ind. Power (India) v. M.V. FRATZIS M, 1996 A.M.C. 390 (S.D.N.Y. 1995) ....... 18

Rosemary d/b/a R M Martin Supplies and Services v. Jaldhi Overseas Pte Ltd., 2008 U.S.

    Dist. LEXIS 1728 (S.D.N.Y. Jan. 4, 2008)................................................. 2, 6, 10, 12

Seaboard & Caribbean Transp. Corp. v. Hafen-Dampfshiffahrt, 329 F.2d 538 (5th Cir.

    1964) ................................................................................................................ 18

Sea-Terminals, Inc. v. Independent Container Lines, Ltd., 1990 U.S. Dist. LEXIS 11561

    (S.D.N.Y. Sept. 4, 1990)...................................................................................... 2, 6

Sea Transport Contrs., Ltd. v. Indus. Chemiques Du Sengal, 411 F.Supp.2d 386

    (S.D.N.Y. 2006) ................................................................................................... 12

Spriggs v. Hoffstot, 240 F.2d 76 (4th Cir. 1957).......................................................... 18

Starboard Venture Shipping Inc. v. Casinomar Transp., Inc., 1993 U.S. Dist. LEXIS

    15891 (S.D.N.Y. Nov. 9, 1993) ............................................................................. 9

The BEAUMONT, 8 F.2d 599 (4th Cir. 1925)............................................................... 18

The Rice Co. v. Express Sea Transport Corp., 2007 U.S. Dist. LEXIS 84300 (S.D.N.Y.

    Nov. 15, 2007) ............................................................................................... 10, 15

Tide Line, Inc. v. Eastrade Commodities, Inc., 2006 U.S. Dist. LEXIS 95870 (S.D.N.Y.

    Aug. 15, 2006) ................................................................................................... 10

Titan Navigation, Inc. v. Timsco, Inc., 808 F.2d 400 (5th Cir. 1987)...................................... 6, 17

Trinidad Foundry and Fabricating, Ltd. v. M/V KAS CAMILLA, 776 F. Supp. 1555

    (S.D. FL. 1991) ................................................................................................... 13

U.S. Maritime Services, Inc. v. Trade Ventures, Inc., 1998 U.S. DIST. LEXIS 10608

    (E.D.LA. July 8, 1988)..................................................................................... 13, 14

United States ex rel. Fowler v. Caremark RX, LLC, 496 F.3d 730 (7th Cir. 2007)........................ 6

United States v. Aquavella, 615 F.2d 12 (2d Cir. 1980).................................................................. 8

Washington-Southern Navigation Co. v. Baltimore & Philadelphia Steamboat Co., 263

    U.S. 629 (1924)....................................................................................................................... 17

Whitney-Fidalgo Seafoods v. MISS TAMMY, 542 F.Supp. 1302 (W.D.WA 1982) .................. 18

World Reach Shipping Ltd., v. Industrial Carriers Inc., 2006 U.S. Dist. LEXIS 83224

    (S.D.N.Y., Nov. 9, 2006) ........................................................................................................ 15

Ythan Ltd. v. Americas Bulk Transport Ltd., 336 F.Supp.2d 305 (S.D.N.Y. 2004).............. 12, 13

Zubrod v. Associated Metals & Minerals Trade Co., 243 F.Supp. 340 (E.D.PA. 1965) ............. 17

## Other Authorities

Moore's Federal Practice (2d Ed. 1988) ............................................................................... 18, 19

## Rules

Rule 12(b)(6).................................................................................................................................. 6

Rule 13 ........................................................................................................................................... 8

Rule 9(b) ........................................................................................................................................ 6

Admiralty Rule B ..................................................................................................................... 15, 16

Admiralty Rule E(2)(a)................................................................................................................... 6

Admiralty Rule E(4)(f) ................................................................................................................... 6

Admiralty Rule E(6) ................................................................................................................. 15, 18

Admiralty Rule E(7) ...................................................................... 2, 3, 6, 8, 9, 10, 14, 15, 17, 19

## PRELIMINARY STATEMENT

Defendant HANJIN SHIPPING CO. LTD. ("HANJIN"), through undersigned counsel, respectfully submits this Reply Memorandum of Law along with the accompanying Declarations of Ian Renford Hawkes, Catherine Vivien Pitman and Kyu-Dong Lee in further support of its motion for counter-security pursuant to Admiralty Rule E(7).

In this action, HANJIN has asserted three counterclaims against VOYAGER. Two of the counterclaims concern damages for breach of the speed and performance warranty in the subject charter party agreement between the parties. The third counterclaim, generally speaking, concerns overpaid hire, and relates to the payment by HANJIN for a period of time when the vessel should have been off-hire.

Rule E(7) and the case law that has developed pursuant to it universally provide that counter-security should ordinarily be provided so as to place the parties on equal footing as regards security for their respective claims and counterclaims. Very few exceptions exist, and HANJIN submits that none of these exceptions apply in this case. For the reasons that follow, Plaintiff VOYAGER SHIPHOLDING CORP. ("VOYAGER") should be ordered to provide counter-security in full for HANJIN's counterclaims since VOYAGER is fully secured with regard to its own claims in this matter. Anything less would give VOYAGER an improper tactical advantage not permitted under Rule E(7).

**ARGUMENT**

**POINT I**

**RULE E(7) REQUIRES VOYAGER TO POST
COUNTER-SECURITY FOR THE FULL AMOUNT
OF HANJIN'S COUNTERCLAIMS**

The law governing Rule E(7)(a) counter-security, as set forth in HANJIN's moving papers, is clear and not seriously debated by VOYAGER. Rule E(7)(a) provides that counter-security **must be given** to a defendant when the defendant has provided security in favor of the plaintiff. The Court has very little latitude in this regard, and the Court's discretion to not award counter-security is limited to a select and very limited set of circumstances which are not present here.

In this action, VOYAGER moved for security from HANJIN pursuant to Rule B and obtained security in the full amount of its claims. HANJIN, in turn, asserted counterclaims in this action which stem from the charter party relationship between VOYAGER and HANJIN. According to the plain wording of Rule E(7)(a), VOYAGER is now required to provide counter-security in favor of HANJIN in the full amount of HANJIN's counterclaims.

In opposition, VOYAGER seeks to avoid providing counter-security by attempting to squeeze itself into one or more of the narrow exceptions under Rule E(7).[1] The burden for proving that VOYAGER fits within any such exception clearly rests with VOYAGER. *See generally* Front Carriers Ltd. v. Transfield ER Cape Ltd., 2007 U.S. Dist. LEXIS 85177 (S.D.N.Y. Nov. 16, 2007); Sea-Terminals, Inc. v. Independent Container Lines, Ltd., 1990 U.S. Dist. LEXIS 11561 (S.D.N.Y. Sept. 4, 1990); Rosemary d/b/a R M Martin Supplies and Services

---

[1] VOYAGER uses highly charged phrases such as "gaming the system" and "retaliatory," and repeatedly argues that HANJIN's counterclaims are frivolous, baseless, and lacking in credibility in an effort to sway the Court and make up in volume what its argument lacks in substance.

v. Jaldhi Overseas Pte Ltd., 2008 U.S. Dist. LEXIS 1728 (S.D.N.Y. Jan. 4, 2008).  We now turn

to the exceptions raised by VOYAGER to show why none apply.

**POINT II**

**HANJIN'S OVERPAID HIRE COUNTERCLAIM
ARISES OUT OF THE SAME TRANSACTION OR OCCURRENCE
AS VOYAGER'S CLAIM AND ACCORDINGLY
<u>COUNTER-SECURITY SHOULD BE REQUIRED</u>**

Rule E(7)(a) provides that counter-security must be provided for counterclaims that arise

out of the same transaction or occurrence as the Plaintiff's claims.  The Rule provides in

pertinent part as follows:

> When a person who has given security for damages in the
> original action asserts a counterclaim that arises from the
> transaction or occurrence that is the subject of the original
> action, a plaintiff for whose benefit the security has been
> given must give security for damages demanded in the
> counterclaim....

Clearly, then, for counter-security to be provided for a counterclaim, the counterclaim <u>must</u> arise

out of the same transaction or occurrence as the claim(s) made in the Plaintiff's Complaint.

Here, of the three counterclaims asserted by HANJIN, VOYAGER asserts that one (and only

one) – the claim for overpaid hire – does not arise out of the same transaction or occurrence.  For

the reasons that follow, VOYAGER is incorrect.

**1.    <u>Background to the Overpaid Hire Counterclaim</u>**

To briefly refresh the background to this particular counterclaim, HANJIN chartered the

M/V KEN from VOYAGER for a duration of about two years.  Toward the end of the charter

period, HANJIN notified VOYAGER that it intended to redeliver the vessel approximately two

weeks early.  In an attempt to mitigate the damages, VOYAGER fixed a substitute charter, but

the new charter did not immediately commence upon the termination of the HANJIN charter,

and was for a lower per-day charter rate. VOYAGER thereafter issued a statement to HANJIN declaring that the vessel was idle for a portion of the early redelivery period (the first five days) and asked that HANJIN pay for this time plus the difference in charter hire rate between the amount HANJIN was paying per day and the amount the new charterer was paying per day for the remaining period of the early redelivery. HANJIN accordingly paid VOYAGER in excess of $125,000 based on the $25,500 per day rate under the charter for the first five days plus $11,550 per day for the remaining days (representing the difference between the $25,500 that HANJIN was paying and the $13,950 that was being paid by the new charterer). Thereafter, in connection with the South African arrest proceeding, HANJIN learned that VOYAGER's demand was made improperly because a portion of the early redelivery time was consumed with a necessary vessel survey during which period the vessel should have been declared off-hire (and for which period HANJIN should not have owed any charter hire). Under principles of English law (which the parties hereto agree governs the charter), HANJIN is entitled to seek rescission of all or at least part of a substantial portion of the $125,000 it paid to VOYAGER, and it is this rescission that forms the basis of the subject counterclaim. *See generally* Hawkes Decl. ¶12.

Applying an overly narrow and restrictive reading of Rule E(7), VOYAGER argues that this counterclaim does not arise under the same transaction or occurrence as the subject charter party under which VOYAGER claims for damages in this action, and so asserts that no counter-security should be awarded for this counterclaim. VOYAGER's argument is in two parts – it alleges that HANJIN's claim arises out of a separate statement unrelated to the charter party contract, and it also alleges that under English law, HANJIN is limited to asserting a claim for fraud or deceit. Both allegations are incorrect. We turn to each in this order.

2.    **There is no Other Document that Makes This Counterclaim A Separate Transaction**

VOYAGER's argument that the overpaid hire counterclaim arises out of a separate document is invalid on its face. HANJIN's counterclaim arises directly and exclusively out of the charter relationship between the parties that is the subject of VOYAGER's action in this matter, and relates specifically to VOYAGER's request from HANJIN that HANJIN make good for the early redelivery period under the charter. That this request may have been in the form of a written request for payment does not in any way separate the request from the charter itself. VOYAGER's payment request was tantamount to an invoice for charter hire under the charter party, and nothing more need be said on this point – it is clear that this counterclaim arises out of the subject charter and is a proper counterclaim for which Rule E(7) counter-security should be provided. There was no separate agreement to pay the amount HANJIN paid – rather, this amount was part of the regular invoicing that had existed during the duration of the charter.

To the extent that VOYAGER is arguing that HANJIN's counterclaim arises out of the statement VOYAGER sent to its shareholders (in which VOYAGER essentially bragged that it had duped HANJIN into paying for what would have otherwise been an offhire event), this is plainly incorrect. VOYAGER's statement to its shareholders is clearly evidence that HANJIN's counterclaim is valid on the merits, but this statement itself is not the basis for HANJIN's claim. It is obvious that HANJIN's claim is rooted in the payment (or, more accurately, overpayment) for use of the vessel under the charter for a period for which payment was not due.

3.    **This Counterclaim Does Not *Solely* Sound in Tort; Moreover, Tort Claims – Including this One - May Indeed Arise Out of the Same Transaction as Contract Claims and Are Not Separate Transactions**

We turn now to the second portion of VOYAGER's argument in this regard. VOYAGER argues that HANJIN's claim is one for fraud or deceit, which is a tort, and that

therefore it does not "arise out of the same transaction or occurrence" as the charter. This argument is specious, as case law directly on point makes clear that torts may arise out of the same transaction or occurrence as the underlying contractual agreement between the parties. *See, e.g.*, Rosemary, 2008 U.S. Dist. LEXIS 1728, *4 (S.D.N.Y. Jan. 4, 2008) (holding claims for breach of contract and counterclaims alleging breach of trust stemming from that contract arose from the same transaction or occurrence);[2] Titan Navigation, Inc. v. Timsco, Inc., 808 F.2d 400, 405 (5th Cir. 1987) (ordering counter-security for counterclaims alleging breach of contract, misrepresentation, breach of warranty, and breach of indemnity when plaintiff claimed a maritime lien); Sea-Terminals, 1990 U.S. Dist. LEXIS 11561 (ordering counter-security for counterclaims alleging damage to and loss of property when plaintiff claimed contractual theories).

Additionally, inasmuch as VOYAGER argues that HANJIN's counterclaim must be presented in terms of a claim for fraud or deceit, respectfully it is not for VOYAGER to define how HANJIN may present its claim in the London arbitral proceedings. Although VOYAGER's actions may indeed have been fraudulent and deceitful, this is not the sole legal theory behind HANJIN's counterclaim. English law provides HANJIN at least three separate legal theories by

---

[2] VOYAGER also argues in passing that HANJIN's counterclaim for overpaid hire does not plead the fraudulent aspects with particularity as required under Rule 9(b) or under Admiralty Rule E(2)(a). Such arguments are well wide of the mark. First, Rule E(2)(a) discusses the particularity requirement of *complaints*. Next, and more importantly, HANJIN's counterclaim for overpaid hire is not one which necessarily sounds in fraud. Finally, and crucially, HANJIN's counterclaim *does* plead the facts with sufficient particularity. No more definite statement is needed by the plaintiff to understand the "who, what, where, when, why and how" of the allegation of overpaid hire. *See* United States ex rel. Fowler v. Caremark RX, LLC, 496 F.3d 730, 740 (7th Cir. 2007); BJC Health Sys. v. Columbia Cas. Co., 478 F.3d 908, 917 (8th Cir. 2007); In re Alpharma Inc. Secs. Litig., 372 F.3d 137, 148 (3d Cir. 2004); Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 29 (1st Cir. 2004). *See also* ATSI Communications, Inc. v. Shaar Fund, Ltd., 493 F.3d 87 (2d Cir. 2007). Either way, that fraud has not been pled with Rule 9(b) particularity is a question not properly before the Court unless raised in support of a Rule 12(b)(6) motion to dismiss. Maersk, Inc. v. Neewra, Inc., 443 F. Supp. 2d 519, 531 (S.D.N.Y. 2006). Indeed, when a party moves for vacatur of a Rule B maritime attachment, the court should "not consider [whether a claim has satisfied the Rule 9(b) pleading requirements] lest Rule 12(b)(6) be completely subsumed by [Admiralty] Rule E(4)(f)," and, by extension, Rule E(7). Id.

which to recover the overpaid hire. As set forth in the Hawkes Declaration, those legal theories

include the following:

> (1)    That the early re-delivery claim has not been fully and finally settled, as alleged by Mr. Bateson. The payment made by Hanjin up to now is a provisional payment on account of its ultimate liability to Voyager under the charter accounting as a whole. Since the charter accounting as a whole has not been agreed, Hanjin remains able to challenge the accuracy of Voyager's individual claims which make up the charter accounting. It remains entitled to dispute its liability to Voyager to pay any damages or compensation for the period 18 to 23 February. For authority see for example paragraph 2-110 of *Chitty on Contracts*…which states:
>
>> *An agreement is also incomplete if it expressly provides that it is 'subject to' the resolution of specified points; there is no contract in such a case until either those points are resolved or the parties agree that their resolution is no longer necessary for the agreement to enter into contractual force.*
>
> (2)    Alternatively to (1), if the early re-delivery claim has been fully and finally settled then that settlement agreement was made following a material factual misrepresentation by Voyager, the legal consequences of which are that Hanjin is entitled to damages and/or rescission….There is a general discussion of the broad principles applicable to misrepresentation at paragraph 6-001 of *Chitty on Contracts*….
>
> (3)    That the payment by Hanjin was caused by the inaccurate statement of Voyager that the vessel was idle and unemployed because Voyager was unable to secure charter business for her, entitling Hanjin to damages for the torts of deceit and/or negligent misrepresentation. See the very general discussion in paragraph 6-001 in *Chitty on Contracts*, as well as the extracts from the same text book which are exhibited to Mr. Bateson's declaration.

(Hawkes Decl., ¶12). Two of these three theories are based on breach of contract, not tort, so the

general point argued by VOYAGER that a tort is unrelated to its contractual cause of action in

this matter is plainly incorrect. Notwithstanding, even assuming HANJIN's claim sounded only

in tort, VOYAGER's argument that the tortious activity alleged by HANJIN does not arise out of the same transaction contradicts well-established case law.

Rule 13 defines counterclaims, and Rule 13(a) provides that a counterclaim is compulsory if it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." These words echo the wording in Rule E(7) concerning counterclaims that arise out of the same transaction or occurrence. The touchstone decision of the Supreme Court on the meaning of "transaction" in this context is <u>Moore v. New York Cotton Exchange</u>, 270 U.S. 593 (1926). In <u>Moore</u>, the Court announced the "flexible meaning" of the word "transaction" in the context of a compulsory counterclaim: "It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." 270 U.S. at 610. Similarly, this Circuit has construed the transaction or occurrence standard liberally:

> In determining whether a claim arises out of the transaction...that is the subject matter of the opposing party's claim, this Circuit generally has taken a broad view, not requiring an absolute identity of factual backgrounds...but only a logical relationship between them. This approach looks to the logical relationship between the claim and the counterclaim, and attempts to determine whether the essential facts of the various claims are so ***logically connected*** that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.

<u>United States v. Aquavella</u>, 615 F.2d 12, 22 (2d Cir. 1980) (emphasis added); *see also* <u>Incas and Monterey Printing and Packaging, Ltd. v. M/V SANG JIN</u>, 747 F.2d 958, 964 (5th Cir. 1984) (the relevant inquiry is whether a "logical relationship" exists between the claim and the counterclaim).

Here, the underlying charter of the vessel is the transaction at issue. The good faith basis upon which VOYAGER claims that two different sides' positions with regard to their respective

claims arising under the same charter party relationship is impossible to discern. Plaintiff cites no support for its broad legal assertion that a claim for breach of contract cannot be said to arise out of the same transaction or occurrence as a tort claim, and the reason for this is simple: the assertion is incorrect and unsupportable.

In sum, HANJIN's overpaid hire counterclaim is a compulsory counterclaim (whether sounding in tort or in contract) that arises out of the same transaction – the charter party relationship between HANJIN and VOYAGER – and so counter-security under Rule E(7)(a) is appropriate and necessary.

## POINT III

### HANJIN'S COUNTERCLAIMS ARE NOT FRIVOLOUS

The premise that counter-security will not be required on the basis of frivolous counterclaims is sound. Starboard Venture Shipping Inc. v. Casinomar Transp., Inc., 1993 U.S. Dist. LEXIS 15891 (S.D.N.Y. Nov. 9, 1993); Finecom Shipping Ltd. v. Multi Trade Enterprises AG, 2005 U.S. Dist. LEXIS 25761 (S.D.N.Y. Oct. 25, 2005). This is because a court's ability to understand the merits of a dispute at an early stage is limited "and courts should be reluctant to prejudice the merits of claims based essentially on pleadings and a sparse record consisting of a few documents, in advance of any discovery. This is particularly so when the ultimate merits will be decided not by this Court, but by an arbitration panel in another country." Finecom, 2005 U.S. Dist. LEXIS 25761, *4; Front Carriers, 2007 U.S. Dist. LEXIS 85177, 7.

"[T]he overwhelming weight of authority among courts in this Circuit (and in other Circuits), favors the view that with regard to the merits of the movant's counterclaim, the court should do no more than screen out '***totally frivolous claims***' by the counterclaimant upon review of a motion under Rule E(7)." Front Carriers, 2007 U.S. Dist. LEXIS 85177 at *6 (emphasis

added) (citing cases); *see also* <u>Rosemary</u>, 2008 U.S. Dist. LEXIS 1728 at \*7 (also standing for

the proposition that only "totally frivolous claims" should be precluded from obtaining counter-

security, citing cases).   Once a court is satisfied that the counterclaim is non-frivolous, it need

not probe more deeply into the strength of the counterclaim in order to grant counter-security.

<u>The Rice Co. v. Express Sea Transport</u>, 2007 U.S. Dist. LEXIS 84300 at \*10 (S.D.N.Y. Nov. 15,

2007) (*citing* <u>Result Shipping Co. Ltd. v. Ferruzzi Trading USA</u>, 56 F.3d 394, 399-400 (2d Cir.

1995)).   Indeed, the Second Circuit standard for Rule E(7)(a) counter-security "provides for a

***severely limited*** inquiry into the merits of the counterclaim at issue."   <u>Front Carriers</u>, 2007 U.S.

Dist. LEXIS 85177, \*5 (emphasis in original) (citing, *inter alia* <u>Result Shipping</u>, 56 F.3d at 399);

*see also* <u>Rosemary</u>, 2008 U.S. Dist. LEXIS 1728, \*7 (citing cases).   Courts must therefore refrain

from engaging in an ***intensive review*** of the merits which have no basis in the text of Rule E(7)

or relevant case law in this Circuit (<u>Front Carriers</u>, 2007 U.S. Dist. LEXIS 85177, \*8) (emphasis

added), particularly when the merits are being litigated in another forum.   <u>Rosemary</u>, 2008 U.S.

Dist. LEXIS 1728, \*9; *see also* <u>Finecom</u>, 2005 U.S. Dist. LEXIS 25761, \*4.

     VOYAGER nonetheless argues that in the absence of HANJIN's submission of actual

evidence (in terms of witness statements, documents, and expert declarations concerning the

status of English law) that HANJIN's counterclaims (all three of them) are somehow frivolous.

In this sense, VOYAGER is arguing that because a counterclaim asserted in an Answer with

Counterclaim is not supported with such evidence it must be frivolous.   VOYAGER's argument

is legally unsupportable.[3]   In <u>Front Carriers</u>, Judge Sullivan rejected the argument that a

---

[3] Taking VOYAGER's argument to its logical conclusion, a Defendant could seek vacature of an attachment on the grounds the allegations in the complaint are frivolous simply because no evidence in support has been submitted. This is clearly not the case.   In <u>Tide Line, Inc. v. Eastrade Commodities, Inc.</u>, 2006 U.S. Dist. LEXIS 95870, 16, n.7 (S.D.N.Y. Aug. 15, 2006), Judge Wood held as follows:

> [T]o show that it has a prima facie maritime claim, a plaintiff seeking a maritime
> attachment need not provide any supporting evidence; its complaint should
> suffice.   In this sense, the use of the phrase 'prima facie claim,' in the maritime

counterclaim must be deemed frivolous when a counterclaimant "has introduced no proof" in support of its bare allegations "at least where the parties have not engaged in *any* discovery and the Court has only a sparse record to review." 2007 U.S. Dist. LEXIS 85177, *8 (emphasis in original).

In any event, HANJIN is in no way "unable" to demonstrate that its counterclaims are *bona fide*. As was seen above, VOYAGER admitted (with respect to the overpaid hire) in its statement to its shareholders that it had undertaken to accomplish the surveys, which should have been an offhire event, while on time paid by HANJIN. With respect to the speed and performance claims, these are supportable and are in fact supported (*see* Lee Decl. ¶ 7-10).

The only other argument raised by VOYAGER charging that HANJIN's counterclaims are frivolous is the declaration of their English solicitor, Mr. Bateson. Their solicitor's position, though, is not that HANJIN's claim is frivolous, but rather that he believes that HANJIN simply cannot win. (Bateson Decl. ¶ 9, 16).[4] HANJIN's English solicitor, on the other hand, says otherwise and has asserted these counterclaims on a sound basis under English law. (*See* Hawkes Decl. ¶ 9-11, 18-21). Where two English solicitors come to differing opinions as to the viability of a claim, absent some issue of credibility there should be no finding that the claim is frivolous. When analyzed more closely, it is apparent that there can be no finding of frivolity here based on VOYAGER's Bateson Declaration. Mr. Bateson does not say that there is no basis in English law for HANJIN's claims, rather, he only doubts whether HANJIN can succeed. (Bateson Decl. ¶ 9, 16). HANJIN's solicitor, Mr. Hawkes, on the other hand, establishes quite clearly that there is a sound basis in English law for HANJIN's claims. (Hawkes Decl. ¶ 9-11,

---

attachment context, differs from the use of that phrase in other contexts [e.g., employment discrimination], where it implies an evidentiary standard.

[4] Mr. Bateson states in both of these paragraphs of his Declaration that HANJIN's claims are "frivolous on [their] face". In context, though, it is clear that the reason he says this is only because he believes that HANJIN will not win. HANJIN's claims are valid under English law, and at no point does Mr. Bateson dispute this.

18-21).    Accordingly, a finding of frivolity is inappropriate under the circumstances.    Judge

McMahon's recent decision in Rosemary, 2008 U.S. Dist. LEXIS 1728, is instructive here.    In

Rosemary, the plaintiff and defendant asserted claims against each other (which were

respectively denied).    Id. at 8-9.    The claims were essentially the "flip side" of one another and

only one set of allegations could be true.    Id.    On such facially equivalent grounds, and without

discovery or any evidence as to credibility, the Court refused to take sides and ordered each side

to post security for the other's claim.    Id.

VOYAGER also argues that HANJIN's counterclaims should be denied counter-security

on the basis of frivolity but link the allegation of frivolity to waiver and estoppel arguments.    The

waiver of a claim or its estoppel, however, do not render it "frivolous".    Rather, waiver and

estoppel are legal theories which set forth that claims (valid or otherwise) cannot be advanced.

Since VOYAGER's waiver and estoppel arguments are not properly linked to concepts of

frivolity, we address these issues separately below.

VOYAGER cites six cases in a lengthy endeavor to analogize the present case to ones in

which counterclaims were denied (only some of which were found to be frivolous).[5]

VOYAGER's efforts in this regard are devoid of any analysis on point, and if anything, the cases

cited serve to demonstrate that HANJIN's counterclaims herein are **not** frivolous.

The first case cited by VOYAGER is Ythan Ltd. v. Americas Bulk Transport Ltd., 336

F.Supp.2d 305 (S.D.N.Y. 2004).    In Ythan, the defendant asserted basically two types of

counterclaims – one that was a contingent indemnity claim, and the other for overpaid charter

hire.    Id. at 10.    For various reasons, Judge Castel did not require counter-security for the

contingent indemnity claim, but significantly (yet disingenuously omitted from VOYAGER's

---

[5] In Sea Transport Contrs., Ltd. v. Indus. Chemiques Du Sengal, 411 F.Supp.2d 386 (S.D.N.Y. 2006), the court denied the defendant's request for counter-security on the basis that it had not asserted the counterclaim in any proceeding.  There was no frivolity finding and VOYAGER's purpose in citing this case is a mystery.

discussion of the case), Judge Castel directed the plaintiff to post counter-security in the full amount of the overpaid charter hire claim. Id. at 11. HANJIN's claim herein for overpaid hire stands on the same footing, as does HANJIN's claims for breach of the speed and performance warranty, as these claims are not contingent.

VOYAGER next turns to Trinidad Foundry and Fabricating, Ltd. v. M/V KAS CAMILLA, 776 F. Supp. 1555 (S.D. FL. 1991). In Trinidad, even though the defendant had already executed a release of liability in favor of the plaintiff for certain claims, it nonetheless sought counter-security for those released claims. Id. at 1-2. This counter-security was of course denied. There is nothing similar about this case to anything in the instant action. Id. at 6-7. VOYAGER's vague attempt to draw a similarity between the release from *liability* in Trinidad to the release of *security* in the South African arrest proceeding (in favor of alternative security posted by VOYAGER) is nonsensical and unavailing. Not only is the nature of the release different, but in Trinidad, the release related to the identical claims for which the defendant sought counter-security, while here, the release relates to different claims against VOYAGER which have not been asserted here.

In Expert Diesel, Inc. v. The Yacht "Fishing Fool", 627 F. Supp. 432 (S.D.FL. 1986) the Florida District Court denied the defendant's counterclaim largely on the basis that it was so vague, inexact and lacking in particularity that a fair quantum could not be set.[6] HANJIN's counterclaims herein are not presented in a way that is vague, inexact or lacking in particularity, so VOYAGER's reliance on this irrelevant case is plainly misplaced.

The fourth case relied upon by VOYAGER is U.S. Maritime Services, Inc. v. Trade Ventures, Inc., 1998 U.S. DIST. LEXIS 10608 (E.D.LA. July 8, 1988). In Trade Ventures, the

---

[6] The other basis for denying the counter-security was related to a rule in the Florida Courts (expressly rejected by the Second Circuit in Result Shipping, 56 F.3d at 400 n.3) that the plaintiff must move to release its property before being able to move for counter-security to restrain the defendant's property. This rule is plainly inapplicable here.

13

Louisiana District Court denied counter-security for lost hire arising out of a cancelled charter as too speculative, finding that such lost profits were from "a road not taken" instead of "past events". Id. at 6. If anything, this case more closely concerns VOYAGER's claims for damages, not HANJIN's. In any event, though, the case is clearly inapposite in HANJIN's counterclaims seek repayment for amounts it had *overpaid* to VOYAGER, which is all undeniably a "past event" and has nothing at all to do with a "road not taken".

Finally, VOYAGER relies upon <u>North Offshore AS v. Rolv Berg Drive AS</u>, 2007 U.S. Dist. LEXIS 87648 (S.D.N.Y. Nov. 29, 2007). In that case, the defendant sought counter-security for lost profits in connection with a side agreement which it claimed the plaintiff had failed to honor. Id. at 3. Judge Stein refused to order counter-security because the condition precedent for the side agreement to have taken effect never actually occurred. Id. at 8. Accordingly, the contract did not take effect and no obligation could have been breached by the plaintiff for which the defendant would need counter-security. Nothing in <u>North</u> bears even the slightest resemblance to any of the facts or circumstances in the instant matter.

There are simply no grounds which support a finding that HANJIN's counterclaims in this action are frivolous.

**POINT IV**

**THE SECURITY OBTAINED IN SOUTH AFRICA
DOES NOT SERVE TO WAIVE OR ESTOP
THIS REQUEST FOR COUNTER-SECURITY**

VOYAGER's argument that HANJIN's counterclaims herein have been waived or are otherwise estopped is without any basis.[7] While it is true that HANJIN has obtained some security from VOYAGER in a vessel arrest proceeding in South Africa, that proceeding related

---

[7] VOYAGER's entire argument on waiver and estoppel is unsupported and research has revealed no case in which waiver or estoppel has ever before been recognized in a Rule E(7) proceeding as a valid reason to deny counter-security.

wholly and entirely to claims not asserted herein. The Pitman Declaration makes it clear that under South African law the proceedings in South Africa would not serve to estop HANJIN from seeking further or additional security for claims not asserted there previously (Pitman Decl., ¶11-13).[8]

The same is true under American law. Admiralty Rule E(6) provides that if the security is insufficient, on good cause shown the Court may allow new or additional sureties. *See* Aqua Stoli Shipping, Ltd. v. Gardner Smith Pty, Ltd., 460 F.3d 434, 445 (2nd Cir. 2006). Such new and additional security is allowed, regardless of whether that party has previously applied for and obtained security for its potential judgment in another forum provided it does not become over-secured in the cumulative. Dongbu Express Co., Ltd. v. Navios Corp., 944 F. Supp. 235, 239-240 (S.D.N.Y. 1996) (both claimant and counterclaimant granted Admiralty Rules B and E(7) security, respectively, when plaintiff was already partly secured in Korea and defendant was already partly secured in Connecticut); *see also* World Reach Shipping Ltd., v. Industrial Carriers Inc., 2006 U.S. Dist. LEXIS 83224, at *15 (S.D.N.Y., Nov. 9, 2006) (defendant, already secured to full amount of underlying claim in Singapore, would be granted Rule E(7) counter-security for any amount which later became unsecured); The Rice Co., 2007 U.S. Dist. LEXIS 84300, at *10 (defendant granted counter-security for the difference between the amount of its underlying claims and the amount it had already otherwise secured from the plaintiff).

VOYAGER argues, in light of the South African proceedings, that HANJIN should be estopped from securing the present counterclaims. Since HANJIN was under no requirement to exhaust its claims for security in the first forum it succeeded in obtaining security, and since it

---

[8] Also true under South African law is that no law requires a claimant who obtained security for a claim in South African court to return to South Africa to obtain additional security for further claims arising out of the same charter or transaction for which arrest proceedings were originally brought. (Pitman Decl., ¶14). The Plaintiff's Brief, which at pages 18 and 19 asserts the opposite (without any foundation or basis whatever) is incorrect.

did not do so, plainly no estoppel argument survives under the undisputed facts. The instant counterclaims are unsecured and were not submitted to the South African proceedings or any other action for purposes of obtaining security, until now. (Pitman Decl. ¶2).[9]

**POINT V**

**HANJIN'S COUNTERCLAIMS ARE NOT ASSERTED
FOR A VEXATIOUS OR HARASSING PURPOSE**

VOYAGER argues that because HANJIN asserted its counterclaims only after it had filed for Rule B relief in this action that HANJIN is asserting manufactured claims for the purpose of engaging in vexatious and harassing litigation and seeking additional security as a "tit for tat" measure. Nothing could be further from the truth. HANJIN asserted its two "new" speed and performance claims against VOYAGER in October 2007 and its overpaid hire claim against VOYAGER in November 2007. The Court docket is clear that VOYAGER did not file its action for security pursuant to Rule B until December 2007.[10]

Contrary to VOYAGER's suggestion that HANJIN sought to assert the speed and performance claims only *after* VOYAGER commenced the present action, the indisputable facts reveal that HANJIN had no opportunity to "manufacture" any "dubious," "concocted," "retaliatory" intentions in response to Plaintiff's Rule B attachment *in December* because VOYAGER had already demanded payment for all three counterclaims *in November*.

---

[9] The claims submitted pursuant to the "complete reconciliation" prepared by Mr. Lee in no way created a warranty that the list was exhaustive. Pitman Decl. ¶11-13. The reasons why the two speed and performance counterclaims raised herein were not raised in the South African proceedings are addressed primarily in the Lee Declaration. With regard to VOYAGER's allegation that if all HANJIN's claims had been presented at the same time in South Africa, then they would not have posted security at all, it is respectfully submitted that this is pure unsupported speculation on the part of VOYAGER's counsel and is otherwise not credible. It is unreasonable to think that VOYAGER and its underwriters would permit the arrest of the vessel to continue indefinitely.

[10] On two occasions in its response papers, Plaintiff misstates the date it commenced the present Rule B attachment action as August 24, 2007. This is clearly an error that undercuts VOYAGER's entire argument in this regard.

## POINT VI

## COUNTER-SECURITY SHOULD BE AWARDED IN FULL

It is well-established that the purpose of Admiralty Rule E(7)(a) security is to place the parties "on an equality" as concerns security. *See* Titan, 808 F.2d at 403.  HANJIN respectfully submits that since VOYAGER is fully (100%) secured for its claims, the only way for this Court to maintain the equality is to require VOYAGER to post counter-security in full in favor of HANJIN.

The duty of the Court to require counter-security is only overcome if the cost of providing counter-security is so burdensome that it might prevent the plaintiff from bringing suit at all.  Id. at 403-405.  The Court is obligated to weigh "the importance of the security interest giving rise to the initial seizure, and the burden of posting countersecurity, against the potential injustice of requiring the defendant-counterclaimant to post security without affording reciprocal protection."  Id. at 404.

The Titan Court held that the extent of the Court's discretion, "although broad, is significantly cabined".  Id. at 403.  Reviewing the cases in which counter-security was denied, the Titan Court found that the balance tips in favor of denying counter-security *only* when the plaintiff is financially unable to post counter-security (and not always, even under such circumstances), or provides some other good reason.  Id.

Insofar as financial inability to post counter-security is concerned, the cases in which courts have found such financial inability to exist are generally those in which individuals (usually seamen) are unable to post large bonds to counter-secure corporations' counterclaims,[11]

---

[11] *See, e.g.*, Washington-Southern Navigation Co. v. Baltimore & Philadelphia Steamboat Co., 263 U.S. 629 (1924); Zubrod v. Associated Metals & Minerals Trade Co., 243 F.Supp. 340 (E.D.PA. 1965); Cudworth v. The ST. CUTHBERT, 146 F.Supp. 857 (E.D.VA. 1957).

or involve plaintiff corporations that are demonstrably insolvent.[12]  Financial difficulties,

however, do not automatically excuse the counter-security requirement.  Seaboard & Caribbean

Transp. Corp. v. Hafen-Dampfshiffahrt, 329 F.2d 538 (5th Cir. 1964).[13]

The fact that HANJIN's counterclaims exceed in value the amount of VOYAGER's

claim is irrelevant.  In Dongbu Express, 944 F. Supp. at 235, in a case where the main claim by

the plaintiff was for the early termination of a charter party contract, the Court weighed the

countervailing principles and found that the defendant was entitled to counter-security in the full

amount of its claim,[14] despite the fact that the counterclaim sought more in damages than the

allowable portion of the plaintiff's claim (following a reduction in the plaintiff's claim under

Rule E(6)).  It has never been held that "good reason" exists not to require full counter-security

when the plaintiff is requested to provide more in counter-security than the plaintiff itself has

obtained in security.  Indeed, such a rule (which does not exist) would only encourage a race to

the courthouse by the party with the smaller claim who would attempt to initiate suit first so as to

be able to prevent a party with a large claim from obtaining full security.

Professor Moore, in Moore's Federal Practice, cautions against this very scenario.

> A holding [precluding imposition of a larger bond on the
> counterclaim than that which was required of the original
> defendant]…would serve only to encourage sham suits and races
> to the courthouse.  Suppose, by way of illustration that two vessels
> collide and one suffers only minor damage and the other
> sustains very severe damage.  If the owner of the slightly damaged vessel
> commences an action *in rem* against the severely damaged vessel a
> relatively small bond will be required by the owner of the severely

---

[12] *See, e.g.*, The BEAUMONT, 8 F.2d 599 (4th Cir. 1925); Spriggs v. Hoffstot, 240 F.2d 76 (4th Cir. 1957); Whitney-Fidalgo Seafoods v. MISS TAMMY, 542 F.Supp. 1302 (W.D.WA 1982).

[13] VOYAGER refers several times in its brief to the inability to post counter-security as a reason for the Court to exercise discretion to not require same, but never suggests VOYAGER is financially unable to provide counter-security for HANJIN's counterclaims.  To the extent that VOYAGER may now claim financial inability to post counter-security in the amount requested, HANJIN hereby respectfully requests an opportunity to take discovery of VOYAGER's finances pursuant to Maryland Tuna Corp. v. MS BENARES, 429 F.2d 307 (2d Cir. 1970) and Rolls Royce Ind. Power (India) v. M.V. FRATZIS M, 1996 A.M.C. 390 (S.D.N.Y. 1995) (Haight, J.).

[14] The amount sought was partially off-set by security already obtained in a separate proceeding.

damaged vessel. If the owner of the latter vessel is compelled to assert his much larger claim in the same action, it might be grossly unfair to limit the security for his claim to the amount of the bond he had to provide, since had he first commenced his action he could have compelled the imposition of a bond large enough to compensate for the severe damages he alleges. In such a case, it might well be "just and reasonable" and more in keeping with the purposes of the rule providing for security on counterclaims to require that the original plaintiff post a larger bond to protect against the counterclaim than the original defendant had to post to protect against the original action. If courts are not alert to such facts, it might encourage the filing of sham suits by parties who know they are potential targets for large *in rem* actions. Similarly, a flat rule providing that security on counterclaims cannot exceed the amount of the original defendant's bond would encourage races to the courthouse by the least injured of the parties sustaining damages in a maritime occurrence.

7A <u>Moore's Federal Practice</u> §E.15 at E-737 (2d Ed. 1988). The underlying current behind the award of Rule E(7)(a) counter-security is the ideal of placing both sides to a suit on equal footing as regards security so that one party cannot gain an unfair advantage over the other merely by being the first to file suit. In an unreported recent decision, Judge Holwell recently held that the foregoing is true, and required the plaintiff to provide counter-security in the approximate amount of $2 million, even though its own claim was for only approximately $100,000. Transcript of Proceedings held on Dec. 18, 2008, <u>C Transport Panamax Ltd. v. Pacific Ocean Resources Ltd.</u>, No. 06-cv-11413, Docket No. 45, (S.D.N.Y. filed Oct. 26, 2006).

Accordingly, since Plaintiff VOYAGER is fully secured for its claims against HANJIN, VOYAGER should be required under Rule E(7)(a) to post counter-security in favor of HANJIN in an amount sufficient to fully secure HANJIN's counterclaims. Anything less would not keep the parties "on an equality".

## CONCLUSION

For all of the foregoing reasons, Plaintiff VOYAGER should be required to provide counter-security in favor of Defendant HANJIN in the full amount of HANJIN's counterclaims of $388,157.80. HANJIN respectfully requests that the Court grant the motion in all respects and award such other and further relief as the Court may deem just and proper.

Dated: New York, New York
      February 1, 2008

                    Respectfully submitted,

                    FREEHILL HOGAN & MAHAR, LLP
                    Attorneys for Defendant
                    Hanjin Shipping Co. Ltd.

By:               _____

                    Michael E. Unger (MU 0045)
                    Lawrence J. Kahn (LK 5215)
                    80 Pine Street
                    New York, NY  10005
                    (212) 425-1900 / (212) 425-1901 (fax)

## CERTIFICATE OF SERVICE

I, MICHAEL E. UNGER, certify that I am counsel of record for The City of New York. On February 1, 2008, the within Reply Memorandum of Law in Further Support of Motion for Counter-Security was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all attorneys of record.

By:  _____

Michael E. Unger (MU 0045)