UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

VOYAGE SHIPHOLDING Corp.

                Plaintiff,

- against -

HANJIN SHIPPING CO., LTD

                Defendant,

---

07 Civ. 11123 (GEL)

## DECLARATION OF CATHERINE VIVIEN PITMAN

I, CATHERINE VIVIEN PITMAN, pursuant to Section 1746 of Title 28 of the United States Code, hereby declare and say the following under penalty of perjury:

I am an attorney of the High Court of South Africa and practice as such as a director of GARLICKE & BOUSFIELD INC., at 24th Floor, Durban Bay House, 333 Smith Street, Durban, South Africa.

1. I submit this Declaration in reply to the opposition filed by Voyager Shipholding Corp. ("Voyager") to Hanjin Shipping Co., Ltd.'s ("Hanjin") motion for counter-security. I am authorized by Hanjin to submit this Declaration on its behalf.

2. Voyager argues Hanjin's speed and performance counterclaims concerning two separate voyages from Shanghai to Kohsichan to Stockton in July, 2005 and from New York to Nemrut Bay in January and February 2006 (with both claims totalling $73,190.42) were waived (or should be subject to collateral estoppel) because they were not included with the other claims asserted in Hanjin's application for security and the arrest of the M/V KEN which was granted by the High Court of South Africa in June 2007. As explained in further detail below, under South African law, this argument is without merit.

NYDOCS1/297950.1



3. In particular, Voyager relies upon Paragraph 8 of my Affidavit of 11 June 2007, submitted in support of the South African arrest proceedings, for the proposition that every conceivable claim which Hanjin may have had arising out of the charter for the M/V KEN had been asserted in those proceedings. Paragraph 8 of my Affidavit states that "The applicant has prepared a complete reconciliation of the financial relationship of the parties flowing from the charter party". The reconciliation was based upon the 25 May 2007 Hanjin Hire Statement, a copy of which was annexed to the Affidavit as Annexure marked CPV2 (but was not included in the version of my Affidavit attached as Exhibit A to the Voyager Memorandum of Law in Opposition to Hanjin's motion for counter-security). From this, Voyager argues Hanjin had elected not to assert these two known speed and performance claims in the South African proceedings. (Voyager Memo., 5, 18).

4. The statements in my Affidavit were all, at the time of its submission, "to the best of my knowledge and belief, true and correct." The information used to prepare the Affidavit and petition, and in particular the list of claims for which security was sought, came directly from Hanjin and it was that information on which I relied. Indeed, to the best of my knowledge and belief at the time of the application, all claims of Hanjin arising out of the charter for the M/V KEN had been included in the petition to the High Court of South Africa.

5. I attach a copy of Annexure CPV2 to my Affidavit which was omitted from the Voyager brief. It is clear from a review of this document, headed "hire statement balance", that the two speed and performance claims had, in fact, not been amongst the claims for which I had been instructed to seek security in the arrest proceedings.

6. I have recently come to learn that the two speed and performance claims for the voyages from Shanghai to Kohsichan to Stockton and from New York to Nemrut Bay were omitted from the document headed "hire statement balance" attached as Annexure CPV2 to my Affidavit inadvertently due to oversight on the part of those individuals responsible for the vessel in the Hanjin chartering department.

7. Neither I nor Hanjin intended to omit the two instant claims for speed and performance from the South African proceedings.

8. Voyager's assertion that "had Hanjin revealed that its request for security in the South African proceedings did not include *all* of its claims arising under the charter party, it is unlikely that [Voyager] would have agreed to provide security in South Africa" (Voyager

273445

Memo., 18) is a weak attempt apparently meant to gain sympathy from the Court. Practically speaking, if Voyager had not provided security in South Africa, then its vessel would have remained under arrest—that reality is why Voyager, as would all other shipowners, agreed to provide security.

9. I am informed that in the New York action Voyager argues the two instant speed and performance claims lack credibility and are "too speculative and insufficiently supported." This argument was not made in respect of the claims for which security was sought in South Africa.

10. Further, I note that with regard to Paragraph 8 of my Affidavit, I do not believe that what is said in Paragraph 8 would operate as an estoppel to a subsequent or additional arrest of the M/V KEN or the application for security in respect of claims for which security has not previously been sought because counsel was unaware that such claims existed. I know of no principle in South African law to that effect.

11. Next, I should also refer to section 3(8) of the Admiralty Jurisdiction Regulation Act, No 105 of 1983, which reads:

> "(8) Property shall not be arrested and security therefore shall not be given more than once in respect of the same maritime claim by the same claimant."

12. Clearly the claims Hanjin are now bringing in London, and for which they seek counter-security in New York, are not the same maritime claims asserted by Hanjin in South Africa but rather are plainly different claims. Accordingly, Hanjin would not on that basis be precluded from arresting the M/V KEN to obtain security for these presently unsecured claims.

13. Even were Hanjin precluded on some basis from a further arrest in respect of the instant speed and performance claims that were subsequently discovered to have been inadvertently omitted from the prior arrest proceedings, that would certainly not preclude, as a matter of South African law, an application for additional security in the South African court proceeding which is still ongoing.

4

14.   Finally, Voyager argues Hanjin should be required to return to South Africa to obtain security for its two instant speed and performance claims. Voyager cites no law in support of this contention. There is no law in South Africa which requires a claimant who obtained security for a claim in a South African court to return to South Africa to obtain additional security for further claims arising out of the same charter or transaction for which arrest proceedings were originally brought.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Dated: Durban, South Africa
      29 January 2008

_____
Catherine Vivien Pitman

273445

NYDOCS1/297950.1

"CVP 2"
53

# HANJIN SHIPPING

25-11, YOIDO-DONG, YOUNGDEUNGPO-KU, SEOUL, KOREA
TLX : HJSHIP K24220   TEL : +82 2 3770 6694   FAX : +82 2 3770 6758   E-mail : handy@hanjin.com

## HIRE STATEMENT (BAL)

TO : VOYAGER SHIPHOLDING CORP.

AA) FM : 29/08/2004 08:30 (GMT)
BB) TO : 18/02/2006 19:24 (GMT)

DATE : 25TH MAY 2007
REF : MVKN-BAL
VESSEL : MV. KEN
C/P DATE : 7TH MAY 2004

| NO | PARTICULARS | | | | | | DR | CR |
|---|---|---|---|---|---|---|---|---|
| 1 | 1) HIRE | | | | | | | $13,730,581.25 |
| | FM : (GMT) 29/08/2004 08:30 | | | | | | | |
| | TO : (GMT) 18/02/2006 19:24 | | | | | | | |
| | 538.454167 | DAYS | X | $25,500.00 | = | $13,730,581.25 | | |
| | 2) OFF-HIRE DUE TO ENGINE STOP ON 19TH JUNE 2005 (6 HOURS) | | | | | | $6,375.00 | |
| | 0.250000 | DAYS | X | $25,500.00 | = | $6,375.00 | | |
| | 3) OFF-HIRE (DUE TO CRANE TROUBLE) | | | | | | $6,286.46 | |
| | 0.246528 | DAYS | X | $25,500.00 | = | $6,286.46 | | |
| | 4) HIRE UP TO VESSEL'S NEXT CHARTER | | | | | | | $130,262.50 |
| | FM : (GMT) 18/02/2006 19:24 | | | | | | | |
| | TO : (GMT) 23/02/2006 22:00 | | | | | | | |
| | 5.108333 | DAYS | X | $25,500.00 | = | $130,262.50 | | |
| | 5) COMPENSATION FOR HIRE DIFFERENCE | | | | | | | $51,253.13 |
| | FM : (GMT) 23/02/2006 22:00 | | | | | | | |
| | TO : (GMT) 01/03/2006 08:30 | | | | | | | |
| | 4.437500 | DAYS | X | $11,550.00 | = | $51,253.13 | | |
| | (LESS) ADD COMM. | | | | | | $347,485.89 | |
| | (LESS) BROKERAGE RESERVE | | | | | | $173,742.94 | |
| | 6) SPEED CLAIM & OVER CONSUMPTION ( LIVERPOOL ~ PENANG, 2005 APR ) | | | | | | $63,750.00 | $1,593.75 |
| | 2.500000 | DAYS | X | $25,500.00 | = | $63,750.00 | | |
| | IFO | 3.300 MT X | USD | 170.00 | = | $561.00 | $561.00 | |
| | MDO | 0.500 MT X | USD | 270.00 | = | $135.00 | $135.00 | |
| | 7) SPEED CLAIM & OVER CONSUMPTION ( PUNTO CARDON ~ SEPETIBA, 2005 JAN ) | | | | | | $25,818.75 | $645.47 |
| | 1.012500 | DAYS | X | $25,500.00 | = | $25,818.75 | | |
| | IFO | 7.000 MT X | USD | 170.00 | = | $1,190.00 | $1,190.00 | |
| | MDO | 1.000 MT X | USD | 270.00 | = | $270.00 | $270.00 | |
| | 8) SPEED CLAIM & OVER CONSUMPTION ( TUBARAO ~ SALDANHA, 2005 FEB ) | | | | | | $16,415.63 | $410.39 |
| | 0.643750 | DAYS | X | $25,500.00 | = | $16,415.63 | | |
| | 9) SPEED CLAIM & OVER CONSUMPTION ( PENANG ~ PARADIP, 2005 MAY ) | | | | | | $41,766.88 | $1,044.17 |
| | 1.837917 | DAYS | X | $25,500.00 | = | $41,766.88 | | |
| 2 | CABLE/VICTUALLING/ENTERTAINMENT CHARGE | | | | | | | $23,311.50 |
| | 537.95764 | DAYS | X | $1,300.00 /MONTH | = | $23,311.50 | | |
| 3 | BOD VALUE | | | | | | | $215,524.00 |
| | IFO | 1,083.700 MT X | USD | 170.00 | = | $180,829.00 | | |
| | MDO | 128.500 MT X | USD | 270.00 | = | $34,695.00 | | |
| 4 | BOR VALUE | | | | | | $199,623.80 | |
| | IFO | 1,027.330 MT X | USD | 170.00 | = | $174,646.10 | | |



54

| | | | | | |
|---|---|---|---|---|---|
| | MOO  92.510 MT X USD 270.00 = | $24,977.70 | | | |
| 5 | ILOHC | $5,000.00 | | | $5,000.00 |
| 6 | INTERMEDIATE HOLD CLEANING | | | | $41,250.00 |
| | USD 2,750 X 15 Voyages = | $41,250.00 | | | |
| 7 | EXTRA H/C FEES | | | | $10,000.00 |
| | 1) CEMENT | $2,500.00 | | | |
| | 2) SALT | $2,500.00 | | | |
| | 3) PETCOKE (2 Voys) | $5,000.00 | | | |
| 8 | US TAX APPLICATION | | | | $54,570.00 |
| | 1Q2005 | $24,480.00 | | | |
| | 2Q2005 | $30,090.00 | | | |
| 9 | ACTUAL OWNERS' ACCOUNTS | | | $19,512.56 | |
| | 1) Panama (Oct 22, 2004) | $977.57 | | | |
| | 2) Puerto Quetzal (Ref. BHPE2005020) | $993.63 | | | |
| | 3) Panama (Ref. BHPE2005013) | $1,086.81 | | | |
| | 4)) New Orleans (Ref. BHPE20050139) | $73.05 | | | |
| | 5) L.Cardenas (Ref. BHPE20050159) | $7.87 | | | |
| | 6) Philadelphia (Ref. BHPE20050179) | $1,356.40 | | | |
| | 7) Xingang (Ref BHPE20040008) | $100.48 | | | |
| | 8) Boston (Ref. BHPE20050092) | $2,299.04 | | | |
| | 9) Acajutla (Ref. BHPE20050044) | $871.74 | | | |
| | 10) Sepetiba (Jan 21, 2005) | $1,930.93 | | | |
| | 11) Saldanha Bay (Feb 13, 2005) | $518.64 | | | |
| | 12) Port Elizabeth (Feb 18, 2005) | $732.44 | | | |
| | 13) La Coruna (Mar 13, 2005) | $2,154.58 | | | |
| | 14) Boston (Oct 30, 2004) | $199.07 | | | |
| | 15) Punta Cardon (Jan 4, 2005) | $1,325.62 | | | |
| | 16) LIVERPOOL ( MAR 18 2005 ) | $419.12 | | | |
| | 17) PENANG ( APR 20 2005 ) | $15.79 | | | |
| | 18) STOCKTON ( SEP 4 2005 ) | $209.52 | | | |
| | 19) BOSTON ( OCT 30 2004 ) | $199.07 | | | |
| | 20) VANCOUVER ( NOV 8 2005 ) | $2,972.56 | | | |
| | 21) LAZARO CARDENAS ( DEC 8 2005 ) | $432.53 | | | |
| | 22) NEMRUT BAY ( FEB 7 2006 ) | $636.10 | | | |
| | **Out-Lay Comm 2.5% ON ABOVE. | $487.81 | | | |
| 11 | PAID AMOUNTS | | $13,503,244.72 | | |
| | | | $14,406,178.62 | | $14,265,446.15 |
| | BALANCE AMT DUE TO OWNERS | | ($140,732.47) | | |
| | | | $14,265,446.15 | | $14,265,446.15 |

Bremer Landesbank
Corresponding Bank in New York
Chase Manhattan
New York, N.Y
Swift Address : CHASUS 33
Account Number : 001-1303668
For Further deposit to:
Bremer Landesbank
Swift Address : BRLADE 22
Account Number : 1416937007
Beneficiary : Voyager Shiphold Corp.