UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
VOYAGER SHIPHOLDING CORP.,                                  :
                                                            :
                    Plaintiff,                              :
                                                            :         07 Civ. 11123 (GEL)
     -against-                                              :
                                                            :         **OPINION and ORDER**
HANJIN SHIPPING CO., LTD.,                                  :
                                                            :
                    Defendant.                              :
                                                            :
------------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/13/08

GERARD E. LYNCH, District Judge:

   In this maritime action, plaintiff Voyager Shipholding Corporation ("Voyager") obtained an order of attachment pursuant to Rule B of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions, Fed. R. Civ. P. Defendant Hanjin Shipping Company, Ltd., ("Hanjin") has asserted counterclaims, and now seeks an order compelling Voyager, which has attached assets of Hanjin's totaling $242,075.85, to post countersecurity in the amount of $388,157.80.

   Hanjin chartered a ship from Voyager pursuant to a charter party dated May 7, 2004. Hanjin returned the vessel two weeks early, and paid Voyager a penalty for the idleness of the vessel for several days, as well as the difference between the hire due under Hanjin's charter party and the rate under the replacement charter that Voyager was able to obtain for the remainder of the contract period.

   Subsequently, Hanjin, the defendant in this action, initiated an arbitration in London on speed and over-consumption claims arising from certain voyages made by the ship. In connection with those claims, in June 2007 Hanjin arrested the vessel in South Africa, releasing

it upon posting of security on June 13, 2007, in the form of a letter of undertaking in the amount of $389,546.23. In the South African action, Hanjin asserted that its claims had been based on "a complete reconciliation the financial relationship of the parties" resulting from the charter party.

On December 10, 2007, Voyager filed this action, alleging breach of the charter party by Hanjin. Voyager obtained a Rule B attachment order and succeeded in obtaining security in the amount of $242,075.85. Hanjin then asserted counterclaims. Although Hanjin has fully secured those claims already asserted in the London arbitration through the arrest proceedings in South Africa, the counterclaims here include three new matters which Hanjin "reserves the right to pursue" in the London arbitration: speed and over-consumption charges relating to two voyages not at issue in the London and South Africa proceedings, and a claim for a refund of part of the payment it had made for early redelivery, based on the allegation that Voyager had falsely represented that the vessel had been unemployed for the full early redelivery period. (Answer & Counterclaim, Dec. 17, 2007, ¶ 36.) Hanjin now moves for an order requiring Voyager to post countersecurity for the amount of these counterclaims.

Under Admiralty Rule E(7)(a), when a party who has given security for claims made in a maritime action asserts a counterclaim "that arises from the transaction or occurrence that is the subject of the original action," the plaintiff "must give security for damages demanded in the counterclaim unless the court for cause shown[] directs otherwise." Although the Rule is mandatory in form, the "unless" clause gives the court "broad discretion in deciding whether to order countersecurity." Result Shipping Co., Ltd. v. Ferruzzi Trading USA, Inc., 56 F.3d 394, 399 (2d Cir. 1995) (citations omitted). In deciding whether cause has been shown to justify a

denial of countersecurity, a court should be guided by the broad purposes of the rule, which is intended "to place the parties on an equality as regards security," but not "to impose burdensome costs on a plaintiff that might prevent it from bringing suit." Id. at 399-400. Voyager raises two distinct broad objections to the posting of countersecurity on one or more of Hanjin's counterclaims.

First, Voyager argues that the claim that it misrepresented the status of the ship upon redelivery is not a counterclaim that "arises from the transaction or occurrence that is the subject of the original action," and thus falls outside of Rule E(7)(a) entirely. Voyager maintains that, because Hanjin's claim is essentially a claim for deceit that arose after the conclusion of the charter party, the claim does not arise from the same transaction – the contract of hire – as do its claims for breach of the charter party. This argument takes too narrow a view of the Rule. Because the relevant language of Rule E is identical to the definition of mandatory counterclaims in Rule 13(a)(1)(A), Fed. R. Civ. P., in determining whether a Rule E(7)(a) counterclaim arises from the same "transaction or occurrence" as the original claims, courts apply the test for compulsory counterclaims developed under Rule 13 and its predecessors. Incas & Monterey Printing & Packaging, Ltd. v. M/V Sang Jin, 747 F.2d 958, 964-65 (5th Cir. 1984); Sea-Terminals, Inc. v. Independent Container Lines, Ltd., No. 89 Civ. 6931, 1990 WL 130766, at *2 (S.D.N.Y. Sept. 4, 1990). With respect to mandatory counterclaims, it has been well established since at least 1926 that the word "transaction" has a "flexible meaning" that "may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." Moore v. New York Cotton Exch., 270 U.S. 593, 610 (1926). Pursuant to this jurisprudence, the Second Circuit has taken a "broad view" of

3

the rule, based on whether there is a "logical relationship between the claim and the counterclaim" such that "'considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.'" United States v. Aquavella, 615 F.2d 12, 22 (2d Cir. 1980), quoting Harris v. Steinem, 571 F.2d 119, 123 (2d Cir. 1978). Other courts have applied the same test in the context of Rule E. See, e.g., Incas, 747 F.2d at 964.

Second, Voyager argues on various grounds that the counterclaims are frivolous. It is well established that countersecurity will not be awarded for counterclaims that are blatantly without merit; this rule is a corollary of the proposition that courts should exercise their discretion so as to avoid imposing unnecessary and burdensome obstacles to plaintiffs' seeking security for maritime claims. Finecom Shipping, Ltd. v. Multi Trade Enters. AG, No. 05 Civ. 6695, 2005 WL 2838611, at *1 (S.D.N.Y. Oct. 25, 2005); Starboard Venture Shipping, Inc. v. Casinomar Transp., Inc., No. 93 Civ. 644, 1993 WL 464686, at *6 (S.D.N.Y. Nov. 9, 1993). However, courts need to be cautious in addressing the merits of such disputes at the very preliminary stage of litigation at which security and countersecurity issues typically arise:

> [C]ourts should be reluctant to prejudge the merits of claims based essentially on the pleadings and a sparse record consisting of a few documents, in advance of any discovery. This is particularly so when the ultimate merits will be decided not by this Court, but by an arbitration panel in another country.

Finecom, 2005 WL 2838611, at *1. Accordingly, the inquiry into the merits of the claims is "severely limited." Front Carriers, Ltd. v. Transfield ER Cape, Ltd., No. 07 Civ. 6333, 2007 WL 4115992, at *2 (S.D.N.Y. Nov. 19, 2007).

Voyager is thus wrong to contend that in order to obtain countersecurity, a counterclaiming party needs to support its claims with evidence. "[A]t least where the parties

have not engaged in any discovery and the Court has only a sparse record to review," the fact that a well-pleaded counterclaim is not supported with evidence is not an obstacle to a requirement of countersecurity. Front Carriers, 2007 WL 4115992, at *3. Nor is it persuasive that Voyager has produced an opinion of an English solicitor that Hanjin will not prevail on its claims. That an expert, through legal analysis, concludes that a claimant is unlikely to succeed in litigation does not indicate that the claim is frivolous; in any event, Hanjin unsurprisingly has submitted a contrary opinion by its English solicitor.

Voyager also submits that the claims on which the demand for security are based can be found to be frivolous because Hanjin suspiciously delayed in making those claims. As Voyager points out, Hanjin has failed, as of yet, to advance those claims in the English arbitration or in the South African action, going so far as to represent to the South African court that its claims there were based on a "complete reconciliation" of the parties' respective obligations under the charter party. Voyager argues that for Hanjin to devise new claims arising from the same charter party now, after Voyager obtained an attachment on its own claims, suggests a merely retaliatory concoction of claims, and should be prohibited by concepts of waiver and estoppel.

But the waiver and estoppel arguments are not well taken. Neither the arbitration nor the arrest of the vessel in South Africa have proceeded to a final judgment on the merits that would give rise to collateral estoppel of claims that could or should have been brought in those forums. Voyager offers no persuasive basis for believing that Hanjin is precluded from making the claims asserted here in either of those litigations. While Hanjin's belated discovery of speed and over-consumption claims on two voyages, after it had supposedly made a "complete reconciliation" of accounts and determined only to assert such claims with respect to other

voyages entirely, raises some skepticism, it is hardly outside the common experience that during the course of litigation new claims are made, or records are viewed in a different light as a result of repeated intense scrutiny, even apart from the discovery of new evidence. Moreover, Voyager appears to be wrong that Hanjin failed to assert these claims until after it was facing the attachment action in New York. Hanjin apparently notified Voyager of its new claims in October and November 2007 (Declaration of Ian Renford Hawkes, dated Jan. 31, 2008, ¶ 4), while Voyager's action was not filed in this Court until December 2007. In any case, skepticism about a claim's merits or mere suspicions about a party's motives are not sufficient to conclude that the claims are frivolous or asserted purely for harassment. Hanjin's counterclaims are well-pleaded and based on plausible if debatable legal theories. That is sufficient to hurdle the frivolity bar and support a demand for countersecurity.

Countersecurity thus should be awarded in this case. The parties dispute two additional collateral issues. First, Voyager asks that the award of countersecurity be limited to $242,075.85, the amount that it has succeeded in attaching pursuant to this Court's order. Hanjin responds that Rule E contains no such limitation, and seeks an award in the full amount of its claims. Courts in this district have sometimes limited countersecurity to the amount of the security obtained by the plaintiff, and sometimes refused to do so. Compare Clipper Shipping Lines, Ltd. v. Global Transporte Oceanico S.A., No. 06 Civ. 15299, 2007 WL 646329, at *2 (S.D.N.Y. Feb. 26, 2007) (limiting countersecurity); Finecom, 2005 WL 2838611, at *2 (same); with Pancoast Trading S.A. v. Eurograni S.r.l., No. 07 Civ. 8581, 2008 WL 190376, at *1 (S.D.N.Y. Jan. 22, 2008) (refusing to limit countersecurity). These cases do not reflect different views of the law, but rather are rooted in the essentially discretionary and fact-bound nature of

countersecurity orders.

There is certainly no general principle of law limiting an award of countersecurity to the amount originally attached. Such an absolute rule would be a travesty, not an application, of the rule that awards of countersecurity aim to place the parties on an "even footing." As Hanjin rightly points out, if after a collision between two vessels, the owner that suffered only minor damages reaches the courthouse first, limiting the party with much greater damages to equal countersecurity hardly puts the parties on an equal footing: the claims of one are fully secured, while the other's remain mostly unsecured, unfairly giving considerable leverage to the fully secured party. (D. Reply at 18-19, quoting 7A Moore's Federal Practice § E.15 at E-737 (2d Ed. 1988).) This Court has recognized this principle in prior litigation, noting that "[a] party with a small claim should not be enabled to defeat full security for a counterparty's larger claim simply by winning the race to the courthouse." Pancoast, 2008 WL 190376, at *1. On the other hand, there are situations in which awarding disproportionate amounts of security to the counterclaimant will itself unbalance the parties' strengths.

This appears to be one such case. First, Hanjin already has obtained considerable security via the South African litigation through a letter of undertaking for $389.546.23. Moreover, these fully-secured claims are apparently the only ones thus far actually asserted in the London arbitration in which the parties actually plan to resolve their differences. Although Hanjin has notified Voyager of these claims (Hawkes Decl. ¶ 4), and "reserves the right to pursue" them in the London arbitration (Answer & Counterclaim, ¶ 36), apparently it has not yet done so. While the Court has rejected Voyager's contention that Hanjin's belatedly-asserted claims are frivolous, the factors suggesting that these claims are less than potent counsel against

7

allowing Hanjin to use them to achieve a position of additional strength as against Voyager by achieving a counter-attachment that, taken together with the letter of undertaking already obtained via the arrest of the vessel, would leave it with much greater security than Voyager holds. Finally, this is not a case like the hypothetical posited by Hanjin in which one party demonstrably has much larger damages from an event that presents fair ground for litigation over who is at fault. Hanjin's and Voyager's claims are not in such vast disproportion that the failure to award full countersecurity places Hanjin at a disadvantage in the litigation. Limiting the countersecurity here appears the fairer course.

Second, Hanjin argues that if Voyager fails to post countersecurity as required, the Court should enjoin Voyager from proceeding with its claims in the London arbitration. Hanjin's argument is rooted in the language of Rule E(7)(a), which provides that "[p]roceedings on the original claim must be stayed until [counter]security is given unless the court directs otherwise." As Hanjin notes, merely staying the instant litigation provides no real remedy, since neither Voyager nor Hanjin has any intention of litigating the merits of the action in this proceeding. To stay this action, while allowing Voyager to retain the security obtained by attachment and to pursue the arbitration in London while defying the Court's order to post countersecurity, would give Voyager the benefit of its attachment while effectively depriving Hanjin of the equalizing remedy provided by Rule E. At the same time, however, there is a natural reluctance to interfere in a foreign proceeding by enjoining an arbitration that the parties have mutually agreed is the appropriate forum to resolve their disputes, in aid of a proceeding that is largely collateral to the proceedings in that forum.

There is no need to reach this issue at this time. The Court has every expectation that Voyager, having invoked the authority of this Court, will comply with its orders. Should the Court's confidence be misplaced, it should be noted that enjoining Voyager from pressing its arbitration claims is not the only, or necessarily the most appropriate, remedy available to the Court. Voyager came to this Court in the first place not to litigate the merits of its disputes with Hanjin, but to obtain security for the claims it is pressing in another forum. That security is available to Voyager only on the terms provided in the Admiralty Rules, including the requirement that the claimant post countersecurity if appropriate. The Court has inherent power to enforce its orders against parties who have thus sought its aid. Should Voyager fail to comply with the countersecurity requirement of Rule E, which is a condition of the availability of the attachment provided by Rule B, the Court retains the power to vacate its order of attachment, and will not hesitate to utilize that power if necessary.[*]

Accordingly, it is hereby ordered that Hanjin's motion for countersecurity is granted to the extent that Voyager is ordered to post countersecurity in the amount of $242,075.85, on or before February 22, 2008.

SO ORDERED.

Dated: New York, New York
       February 13, 2008

                                                  GERARD E. LYNCH
                                                  United States District Judge

---

[*] The Court is similarly confident that Hanjin would not have sought countersecurity if it did not intend actively to litigate its counterclaims. If it has no such intention, utilizing phantom counterclaims simply to obtain additional security would be an abuse of this Court's process. If Hanjin fails to pursue these claims promptly in the London arbitration, or to litigate them here, the countersecurity order will be vacated.