UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

VOYAGER SHIPHOLDING CORP.,                    :

                         Plaintiff,         :

    - against -                                   :

HANJIN SHIPPING CO., LTD.,                    :

                    Defendant.          :

-----------------------------------------------------------------------X

07 Civ. 11123 (GEL)

ECF CASE

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT
## OF MOTION FOR RECONSIDERATION

Plaintiff, Voyager Shipholding Corp. (hereinafter "Voyager" or "Plaintiff"), by its

undersigned counsel, Lennon, Murphy & Lennon, LLC, pursuant to Federal Rule of Civil

Procedure 60(a), (b)(1) and (b)(6) and Local Civil Rule 6.3 files the within Memorandum of Law

in support of its Motion for Reconsideration of the Court's February 13, 2008 Opinion and Order

("Order") granting Defendant's motion for countersecurity pursuant to Supplemental Admiralty

Rule E(7). For the reasons set forth herein, upon reconsideration the Court should vacate its

February 13, 2008 Opinion and Order and deny the motion for countersecurity.

### STANDARD

Rule 60 of the Federal Rules of Civil Procedure provides for the filing of a motion for

reconsideration to correct a clear error of law or prevent manifest injustice. Local Civil Rule 6.3,

which governs motions for reconsideration, provides as follows:

> A notice of motion for reconsideration or reargument of a court order determining
> a motion shall be served within ten (10) days after the entry of the court's
> determination of the original motion, or in the case of a court order resulting in a
> judgment, within ten (10) days after the entry of the judgment. There shall be
> served with the notice of motion a memorandum setting forth concisely the
> matters or controlling decisions which counsel believes the court has overlooked.
> The time periods for the service of answering and reply memoranda, if any, shall

> be governed by Local Civil Rule 6.1(a) or (b), as in the case of the original motion. No oral argument shall be heard unless the court directs that the matter shall be reargued orally. No affidavits shall be filed by either party unless directed by the court.

*See* Local Civil Rule 6.3 of the United States District Courts for the Southern and Eastern Districts of New York. The Court's February 13, 2008 Opinion and Order was entered on the docket on February 14, 2008. Monday February 18, 2008 was a Court holiday. Weekends and legal holidays are excluded from the calculation of the 10 day period. See Local Rule 6.3; Fed. R. Civ. P. 6(a). Thus, the 10 day period ends on February 29, 2008. Accordingly, this Motion is timely filed.

A motion filed pursuant to Local Civil Rule 6.3 is to be "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court." *See Allied Maritime, Inc. v. The Rice Corp.,* 361 F. Supp. 148, 149 (S.D.N.Y. 2004), *overruled on other grounds, Aqua Stoli Shipping Co. Ltd. v. Gardner Smith Pty Ltd.,* 460 F.3d 434 (2d Cir. 2006); *see also Pasha v. William M. Mercer Consulting, Inc.,* 2004 U.S. Dist. LEXIS 12277, *3 (S.D.N.Y. 2004), *aff'd* 2005 U.S. App. LEXIS 12393 (2d Cir. 2005); and *Maersk v. Neewra, Inc.,* 2006 U.S. Dist. LEXIS 73096, *4 (S.D.N.Y. 2006).

Generally, reconsideration will only be granted where the moving party can demonstrate that there has been newly discovered evidence, the court failed to properly consider the arguments or evidence before it, or the court made an error of law. *See Commer v. McEntee*, 2006 U.S. Dist. LEXIS 82395 (S.D.N.Y. 2006); *Degrafinreid v. Ricks,* 452 F. Supp. 2d 328, 331 (S.D.N.Y. 2006).

## ARGUMENT

Although Voyager acknowledges and concedes that the Court did not commit a clear error of law in rendering the Order directing Voyager to post countersecurity, it respectfully submits that it is manifestly unjust for Voyager to be required to post countersecurity on Hanjin's "claim" because the claim is frivolous and unsupported by legally sufficient allegations.

In this Motion for Reconsideration, Voyager focuses solely on the aspect of the Court's Order directing Voyager to post countersecurity on Hanjin's "deceit" counterclaim. Voyager respectfully submits that the Court overlooked critical defects in Hanjin's counterclaim upon which its motion for countersecurity was premised and failed to consider the points raised in the February 13, 2008 letter from its counsel and failed to permit Voyager to respond to Hanjin's reply memorandum of law and supporting evidence that raised entirely new and novel arguments in support of Hanjin's motion for countersecurity. Had the Court properly considered Voyager's arguments in opposition to the Motion for Countersecurity and/or considered the February 13, 2008 letter from Voyager's counsel and permitted Voyager to submit further briefing to respond to Hanjin's new, and baseless, contentions, the record would have clearly required denial of the motion for countersecurity.

In the context of a Rule E(7) application, a grant of countersecurity is far from automatic. Rule (E)(7) limits a countersecurity application to counterclaims arising from the same transaction or occurrence that is the subject of the original action. Furthermore, outside of the requirements of Rule E(7), as confirmed by the Second Circuit Court of Appeals, the Court has considerable discretion to in deciding whether to order countersecurity. Yet, in its February 13 Order the Court stated: "Hanjin's counterclaims are well-pleaded on plausible if debatable legal theories. Voyager submits that the Court overlooked the crucial fact that Hanjin's

"counterclaim" was not well-pleaded and, all things reconsidered, can only be characterized as
frivolous  This point was set out in Voyager's motion papers and in its counsel's February 13,
2008 letter to the Court as follows:

> Voyager has had no opportunity to respond to the Declaration of Ian Hawkes,
> which clearly contains new arguments and evidence not made or submitted with
> Hanjin's original motion papers, [thus] we are compelled to note a few key points:

> 1.   Mr. Hawkes admits that Hanjin has not asserted in the ongoing
>      arbitration its subject "deceit" and speed and performance claims.
>      *Hawkes Declaration ¶ 6;*

and

> 2.   In his comments regarding Hanjin's deceit claim, Mr. Hawkes
>      Contends that Hanjin's claim can be formulated in different ways
>      under English law.  He goes on to offer that Hanjin's claim *could*
>      be couched as an "incomplete agreement;" or "misrepresentation;"
>      or "inaccurate statement" and then astonishingly admits "Hanjin
>      has not reached a final decision on how its over payment of hire
>      claim will be formulated *if it cannot be settled."  Hawkes
>      Declaration ¶¶ 12-13.*

*See February 13, 2008 letter attached hereto as Exhibit "1."*  Mr. Hawkes' sworn Declaration is
nothing short of an admission that Hanjin *never* has plead the theoretical counterclaims referred
to in his Declaration, either in New York or London or anywhere for that matter.  Vague and
equivocal assertions of foreign counsel as to potential liability theories the claimant *might* pursue
in the future are legally insufficient to justify requiring Voyager to post countersecurity in this
case and obviously fall far short of constituting a "well-pleaded" counterclaim because in fact
they have not been pled at all.

Thus, in considering the merits of Hanjin's motion for countersecurity, the Court should
have analyzed Hanjin's *actual* pled counterclaim, not the after the fact arguments of its counsel.
As set forth above, despite Mr. Hawkes' equivocations as to *possible alternative liability
theories*, Hanjin submitted NO rebuttal to the Declaration of Douglas Bateson which clearly
established that as a *matter of English law*, Hanjin's single *pled* "deceit" counterclaim is

4

baseless, frivolous and unrecoverable as a matter of English law. With all due respect, it appears

from the February 13, 2007 Order that the Court overlooked the key distinction between the

single, yet frivolous and legally defective, deceit counterclaim Hanjin pled and the purely

*theoretical* causes of action discussed by Mr. Hawkes in his Declaration, and treated Mr.

Hawkes' Declaration as a proxy for Hanjin's actual pled counterclaim. In doing so, and in

foreclosing Voyager any opportunity to respond to the allegations in Mr. Hawkes' Declaration,

none of which appear to have been raised or even suggested in Hanjin's original motion papers,

the Court mechanically applied Supplemental Rule E(7).

      If all that is required of a counterclaimant to obtain countersecurity under Rule E(7) is to

raise any *theoretical* counterclaim regardless of its merit, then the granting of countersecurity

has, indeed, become effectively "automatic." Yet, the rule is not designed to be so easily

satisfied. *See North Offshore AS v. Rolv Berg Drive AS*, 2007 U.S. Dist. LEXIS

87648 (S.D.N.Y. November 29, 2007)("whether to grant or deny [a] motion for countersecurity

is an equitable determination within the broad discretion of this Court"). In *North Offshore*,

under similar circumstances Judge Stein denied a motion for countersecurity premised on a

counterclaim that "appeared" frivolous and designed to thwart the plaintiff's pursuit of its claim.

      Paragraphs 30-33 of Hanjin's Answer and Counterclaim are controlling with regard to

whether Hanjin asserted a "well-pleaded" counterclaim:

> 30.    VOYAGER informed HANJIN that the vessel was idle for the
> period between February 18 when it was re-delivered by HANJIN and
> 2200 hours GMT on February 23, 2006 when the ship was delivered by
> VOYAGER to non-party Eitzen.
>
> 31.    The sum paid by HANJIN to VOYAGER for the early re-delivery
> was $125,377.66 (calculated as follows: US$25,500 per day in respect of
> the period of unemployment from February 18 to February 23, 2006 . . . .

32.    In the course of the application by VOYAGER to set aside the arrest in South Africa, it was learned by HANJIN that the vessel was not in fact *idle* between February 18 and February 23, 2006 but rather VOYAGER had sent the vessel to renew her docking and intermediate surveys "whilst on paid time".

33.    As a result of the ***deception*** by VOYAGER, as a matter of English law . . . HANJIN is entitled to recover the full amount of the sums it overpaid to VOYAGER ($125,377.66) for the early re-delivery.

*Hanjin Answer and Counterclaim ¶¶ 30- 33.* These paragraphs constitute the sum total of Hanjin's actual "deceit" cause of action against Voyager in respect of alleged "overpayment" of hire.

As is discussed in the Court's Order, Voyager submitted a Declaration from its English solicitor, Douglas Bateson, in support of its opposition to Hanjin's motion for countersecurity. However, the purpose of Mr. Bateson's Declaration was not (as intimated by the Court) to argue that Hanjin is "unlikely to recover," but rather, to make clear that the claim is "wholly without merit and frivolous on its face." *Bateson Declaration ¶ 16.* In its Order, the Court also concluded that "Hanjin unsurprisingly has submitted a contrary opinion by its English solicitor." *February 13, 2008 Order.* Respectfully, it appears the Court misconstrued this evidence.

In his Declaration, Hanjin's English solicitor, Mr. Hawkes, cleverly sidesteps addressing Mr. Bateson's conclusion that the Hanjin *pled* deceit claim is frivolous by wandering around the issue and discussing various theories that Hanjin apparently hopes may manifest themselves evidentially at some later date in the London arbitration. In respect of the "deceit" counterclaim, the crucial passage of Mr. Hawkes' Declaration is found at paragraph 24 where in his attempt to "hurdle the frivolity bar" he claims that Hanjin "relied on the representations described in paragraphs 9-11 above." *Hawkes Declaration ¶ 24.* Paragraphs 9-11 of his Declaration can be

6

distilled into the following allegations upon which he concedes Hanjin rests its deceit

counterclaim:

> Voyager represented expressly or impliedly that following redelivery the vessel
> was ***unemployed*** for a period of slightly over 5 days because Voyager was unable
> to fix a charter for her during this time.

*Hawkes Declaration* ¶ 9. By contrast, Hanjin's *pled* counterclaim states:

> It was learned by HANJIN that the vessel was in fact not ***idle*** between February
> 18 and February 23, 2006 but rather VOYAGER had sent the vessel to renew her
> docking and intermediate surveys "whilst on paid time."

*Hanjin Answer and Counterclaim* ¶ 32. Quite clearly, Hanjin's "deceit" counterclaim rests on

the premise that Voyager deceived Hanjin into believing that the Vessel was unemployed

between February 18 and February 23 when in fact it was not. The reference in Hanjin's pled

counterclaim to "whilst on paid time" makes it indisputable that Hanjin's counterclaim rests

entirely on the theory that it "relied" upon Voyager's circular to shareholders. The phrase

"whilst on paid time"[1] is lifted directly from the circular. The circular states:

> The vessel was re-delivered from her 18-month employment to Messrs Hanjin, at
> the port of Nemrut Bay (which is close to Izimir in Turkey and within a
> "hopping" distance from the Greek island of Chios) on 18th February, 2006. This
> re-delivery date fell short of the minimum warranted period under the charter
> party by about a week which under English law still held the Charterers liable for
> payment to Owners for the unutilized days. With Owners' blessings, Managers
> considered this a most opportune time to undergo – ***whilst on paid time*** – the
> ordinarily very expensive exercise of renewing the vessel's due Docking and
> Intermediate surveys. Taking further advantage of the vessel's proximity to
> Piraeus, the vessel was ordered to sail there upon re-delivery precisely for this
> purpose and taking still further advantage of vessel's young age, the need (and
> expense) of drydocking the vessel was avoided by means of a so-called "in lieu of
> drydocking" underwater inspection by a Class approved diver, who, in fact, found
> her bottom in very good condition. As a result, both surveys were renewed with

---

[1]    To put context to this phrase, it is noteworthy that it is a reference to the fact that Hanjin had already
compensated Voyager for the February 18 to February 23 time period under the settlement agreement arising from
Hanjin's early redelivery of the Vessel, and not intended to indicate income from some collateral source. Hanjin has
not contended otherwise.

minimum cost and vessel was credited with new certificates valid until 26th April, 2008.

*See Bateson Declaration ¶ 6.*

In order for there to be any merit whatsoever to the deceit claim, which is denied, Hanjin would have to allege that during the February 18 to February 23 time period the vessel was actually employed, *i.e.* earning income. If, in fact, the Vessel was idle or unemployed during that time period, it is elementary that Hanjin's counterclaim must fail. Yet, neither the Hanjin pled counterclaim nor Voyager's circular to shareholders suggest that the Vessel was employed during this period. In this regard, it is also noteworthy that the Court overlooked the Declaration of Joel E. Varnal, the Master of the Vessel, submitted in support of Voyager's opposition to Hanjin's motion for countersecurity. Together with Mr. Bateson's Declaration, Capt. Varnal's un-refuted testimony clearly establishes that the Vessel was unemployed during the February 18 to February 23 time period and was "idle" for all but 7.5 hours, during which time the Vessel carried out non-employment, non-revenue generating inspections. *Declaration of Joel E. Varnal; Declaration of Douglas Bateson ¶ 15.*

As Mr. Bateson has made clear, Voyager's circular to shareholders is not a document upon which Hanjin every could have relied in any event because Hanjin only became aware of it in 2007, well after it was issued in March 2006 and well after the settlement between Voyager and Hanjin arising from Hanjin's early redelivery of the vessel from charter. *Bateson Declaration ¶ 21.*

Quite tellingly, Mr. Hawkes concedes that Mr. Bateson correctly described the requirement under English law that in order to sustain a prima facie deceit claim the claimant must allege a "positive act or representation." *Hawkes Declaration ¶ 15.* Mr. Hawkes' concession underscores the entire point of Voyager's motion for reconsideration – *i.e.* that

Hanjin's failure to identify any actual positive act or representation by Voyager upon which it relied renders its counterclaim frivolous.

When careful consideration is given to the actual allegations it has made, Hanjin's "deceit" counterclaim is undoubtedly frivolous. On the one hand, Hanjin alleges that Voyager represented the vessel was idle during the February 18 to February 23 time period – *Hanjin Counterclaim ¶ 31,* when, according to Hanjin it was not – *Hanjin Counterclaim ¶ 33,* but on the other hand fails to allege that it relied on such alleged acts or representations in compensating Voyager for the Vessel's unemployment after the early redelivery by Hanjin. This obvious disconnect, *i.e.* lack of causation, is fatal to Hanjin's counterclaim. That the Court may have overlooked this fact is understandable because in his Declaration Mr. Hawkes did a masterful job of obfuscation, but as set forth above the facts as *pled* in the Hanjin counterclaim do not support the tort of deceit under English law and the claim as pled is therefore frivolous. Voyager respectfully submits that it is manifestly unjust to allow Hanjin to obtain countersecurity on a concocted and frivolous counterclaim. This statement would be true in any case, but is especially true here because Hanjin previously obtained security from Voyager by arresting its vessel in South Africa. Viewed against this history, Hanjin's motion for countersecurity reeks of retaliation. The retaliatory nature of the counterclaim is not remediated simply by Hanjin's counsel having written to Voyager's counsel about the issue in November 2007, less than one month before Voyager commenced this action. *See February 13 Order.*

For all of the foregoing reasons, Voyager respectfully requests that the Court reconsider its February 13, 2008 Opinion and Order and deny Hanjin's motion for countersecurity in respect of the deceit counterclaim.

Dated: February 29, 2008
New York, NY

Respectfully submitted,
The Plaintiff,
VOYAGER SHIPHOLDING CORP

By: _____
Patrick F. Lennon (2162)
Nancy R. Peterson (2871)
LENNON, MURPHY & LENNON, LLC
The Gray Bar Building
420 Lexington Ave., Suite 300
New York, NY 10170
(212) 490-6050 - phone
(212) 490-6070 - fax

## AFFIRMATION OF SERVICE

I hereby certify that on February 29, 2008, a copy of the foregoing Memorandum of Law was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's CM/ECF system.

By: _____

Patrick F. Lennon